## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| **ANDREA DAVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-0112** |
| | ) | |
| **DAWGS OF ST. JOHN, INC., d/b/a SUNDOG** | ) | |
| **CAFÉ, MICHAEL BARRY, and BARBARA** | ) | |
| **BARRY,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

APPEARANCES:

**Peter J. Lynch, Esq.**
Flag Law VI
St. Thomas, VI
    *For Plaintiff*

**Karin A. Bentz, Esq.**
Law Offices of Karin A. Bentz, P.C.
St. Thomas, VI
    *For Defendants*

## <u>MEMORANDUM OPINION</u>

**MOLLOY, Chief Judge**

**BEFORE THE COURT** are the following motions:

1.  Plaintiff's Motion to Dismiss Counterclaims, pursuant to Rule 12(b)(6), filed on December 21, 2020. (ECF No. 6.)[1]

2.  Plaintiff's Motion to Dismiss Counterclaims for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), filed December 21, 2020. (ECF No. 7.)[2]

---

[1] Defendants/Counter-Claimants filed a timely opposition in response to the motion. (ECF No. 19.) The time for filing any reply has expired. *See* LRCi 6.1(b)(5) (providing that the time for filing a reply is seven days after the service of the response).

[2] Defendants/Counter-Claimants filed an opposition to the motion, (ECF No. 12), and Plaintiff filed a reply thereto (ECF No. 21).

3.  Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(c),[3] filed August 5, 2021. (ECF No. 34.)[4]

4.  Defendants' Motion to Dismiss Individual Defendants pursuant to Federal Rule of Civil Procedure 12(c), filed September 17, 2021. (ECF No. 39.)[5]

For the reasons stated below, the Court will deny Plaintiff's 12(b)(1) Motion to Dismiss Counterclaims (ECF No. 7) and grant, in part, and deny, in part, the other three motions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In her Verified Complaint (ECF No. 1-1) (Complaint or Compl.), Plaintiff, Andrea Davis, alleges that she was employed by Defendant Dawgs of St. John, Inc., d/b/a Sun Dog Café (Sun Dog) from March 16, 2018, until January 7, 2019. Compl. at ¶¶ 11-12. During her time of employment with Sun Dog, Plaintiff alleges that she "encountered intolerable working conditions of sex discrimination, sexual harassment and age discrimination." *Id.* at ¶ 13. Plaintiff claims that one of the forms of harassment was through sexually explicit and vulgar messages sent by Defendant Michael Barry and other employees in an internet-based group electronic communication medium "Sundog Staff Chat," as well as "overhearing sexually explicit language and witnessing vulgar and sexually offensive actions by managers and employees" during work hours. *Id.* at ¶¶ 32-38. Plaintiff asserts that she "complained of the harassment to Defendants . . . but they took no action to prevent the offensive activity." *Id.* at ¶ 39. Plaintiff also alleges that Defendants failed to promulgate and adopt a "policy against sexual harassment in conformity with local or federal law." *Id.* at ¶¶ 27-29. Plaintiff specifically charges the Defendants Michael Barry and Barbara Barry failed to promulgate an employee handbook, provide sexual harassment and bias training, and properly supervise and admonish employees regarding sexual harassment. *Id.* at ¶¶ 27, 30-31. Plaintiff further

---

[3] Defendants title their motion as a motion to dismiss. Even though courts analyze motions brought under Federal Rule of Civil Procedure 12(c) similarly to motions to dismiss for failure to state a claim brought under Rule 12(b)(6), Rule 12(c) motions are more commonly referred to as motions for judgment on the pleadings. *See* discussion *infra* at 7-8.

[4] Plaintiff filed an opposition to the motion (ECF No. 36), and Defendants filed a reply in support of their motion (ECF No. 38).

[5] Plaintiff filed an opposition to the motion (ECF No. 44), and Defendants filed a reply in support of their motion (ECF No. 45).

alleges that she discussed pay discrepancies with Defendant Michael Barry and Defendants' bookkeeper, Kim Templeton, including, but not limited to, not receiving credit card tips. *Id.* at ¶¶ 46-48. Finally, Plaintiff alleges that she was wrongfully terminated when, after giving advance notice of needing time off and lining up alternate servers who could cover Plaintiff's work shifts while she was gone, upon her return from her leave, "she was told by Defendant Michael Barry that there were no shifts available to give her." *Id.* at ¶¶ 49-57. Plaintiff claims that she was treated differently from her co-workers, specifically, Jennifer Montgomery and Chris Metting, who are younger than she and who were allowed to "leave for months at a time" and "return to work without restriction." *Id.* at ¶¶ 58-61. Plaintiff also claims that other employees were allowed "to switch shifts more than on a 'one-time basis.'" *Id.* at ¶ 62. Plaintiff alleges that her termination was based upon her sex and age. *Id.* at ¶¶ 61, 73, 76, 82, and 88. In addition, Plaintiff alleges that her termination was in retaliation for her complaints of harassment and wage discrepancies. *Id.* at ¶¶ 63, 71, and 89. Plaintiff also alleges that the retaliation extended to Defendants persuading another prospective employer from hiring her. *Id.* at ¶¶ 77-80.

Plaintiff first filed her harassment and discrimination charges with the Equal Employment Opportunity Commission (EEOC) and received a "right to sue" letter issued by the EEOC on or about August 19, 2020. *Id.* at ¶¶ 15-16. Plaintiff filed the Complaint herein with the Superior Court of the Virgin Islands on October 15, 2020. The action was removed by Defendants to this Court on November 9, 2020. *See* Notice of Removal (ECF No. 1). Plaintiff formally denominates her claims as: wrongful termination[6] under Title VII of the Civil Rights Act of 1964 (Count I); sexual harassment under Title VII of the Civil Rights Act of 1964 (Count II); wrongful termination, sexual harassment and discrimination under 24 V.I.C. §§ 451(a) and 453 (Count III); employment discrimination in violation of 10 V.I.C. § 64(1)(a) (Count IV); sexual harassment in violation of 10 V.I.C. § 64a (Count V); retaliation in violation of 24 V.I.C. § 451a (Count VI); pay discrimination under the Equal Pay Act of 1963 (Count VII); illegal retention of tips in violation of the Fair Labor Standards Act (Count VIII); age

---

[6] Brought under Title VII of the Civil Rights Act, Plaintiff grounds this count upon "unlawful discrimination in employment" based upon Plaintiff's sex. Compl. at ¶¶ 95 & 97.

discrimination in violation of 29 U.S.C. § 623(a) (Count IX); promissory estoppel (Count X); and negligent retention (Count XI). Compl. at *passim*.

For their Counterclaim, Defendants allege that Plaintiff has been serially employed, terminated, and filed EEOC complaints and lawsuits against five employers, including Defendants. Answer, Affirmative Defenses and Counterclaim (ECF No. 4) (Counterclaim or Countercl.) at 18-20. The Counterclaim alleges that the pattern and practice of Plaintiff demonstrates "malicious prosecution and wrongful use of civil proceedings," for which Defendants seek declaratory relief pursuant to 28 U.S.C. § 1651(a). *Id.* at 20-21. Defendants also seek damages for defamation. They allege that "[p]rior to and after Ms. Davis left her job at Sun Dog Café, she made numerous statements about her employers, co-workers, conditions of employment, and Counterclaimants that were false and misleading." *Id.* at 21, ¶ 56. In support of this allegation, Defendants give only one example, specifically: "Mr. Barry was contacted by a business associate, Harith Wickrema, a college professor, and told that Ms. Davis had been talking to him and others in a group claiming that Mr. Barry was a 'crook' and 'stealing from the employees.'" ECF No. 4 at 16, ¶ 16.

Defendants move to dismiss Counts I-VI, X, and XI of the Complaint under Federal Rule of Civil Procedure 12(c), for failing to state claims upon which relief can be granted. *See* ECF Nos. 34-35. Defendants also move to dismiss all 11 counts of the complaint against the individual defendants, Michael Barry and Barbara Barry. *See* ECF Nos. 39-40. Plaintiff filed two separate motions to dismiss the Counterclaim: for failing to state claims upon which relief can be granted and for lack of subject matter jurisdiction. *See* ECF Nos. 6-7.

## II.  LEGAL STANDARD

### A. Rule 12(b)(6) - Failure to State a Claim

A complaint, or certain portions thereof, may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint "in the light most favorable to the plaintiff*." In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Court must accept as true all the factual allegations contained in the complaint and draw all reasonable inferences in favor of the non-moving

party. *Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010), *cert. denied*, 562 U.S. 1271 (2011).

The Supreme Court set forth the "plausibility" standard for overcoming a motion to dismiss in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and refined this approach in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint that pleads facts "merely consistent with a defendant's liability, . . . stops short of the line between possibility and plausibility of entitlement of relief." *Id.* (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

To determine the sufficiency of a complaint under the plausibility standard, the Court must take the following three steps:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 674, 679).

### B. Rule 12(b)(1) – Lack of Subject Matter Jurisdiction

Federal district courts are courts of limited jurisdiction and can exercise subject matter jurisdiction based upon federal question jurisdiction, diversity jurisdiction, and/or admiralty/maritime jurisdiction only. *See, e.g., DeLagarde v. Tours VI Ltd.*, Case No. 3:20-cv-0093, 2022 U.S. Dist. LEXIS 34405, at *6-7 (D.V.I. Feb. 28, 2022); 28 U.S.C. §§ 1331-33. Thus,

if the Court "lacks subject-matter jurisdiction, the [C]ourt *must* dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added).

Plaintiff moves to dismiss Defendants' Counterclaim for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.[7] (ECF No. 7). As this Court has articulated:

> An attack under Rule 12(b)(1) to a court's subject matter jurisdiction can be either a facial or factual attack. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). A facial attack—as it is denominated—challenges the sufficiency of the jurisdictional allegations in the complaint on their face. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006). In contrast, a factual attack disputes "the factual allegations underlying the complaint's assertion of jurisdiction," and involves the presentation of competing facts. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack requires that a court "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc.*, 220 F.3d at 176. On the other hand, a court may consider evidence beyond the complaint in reviewing a factual attack. *Id.* In so doing, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "no presumptive truthfulness attaches to plaintiff's allegations." *Mortensen*, 549 F.2d at 891.

*United States ex rel. Scionti Constr. Grp., LLC v. Aptim Env't & Infrastructure, Inc.*, Civil Action No. 2020-0034, 2021 U.S. Dist. LEXIS 212485, at *3-4 (D.V.I. Nov. 3, 2021).

For such challenges to subject matter jurisdiction, the plaintiff (here, for the purposes of the motion currently before the Court, Defendants who are bringing the Counterclaim) bears the burden of persuasion. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (citing *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

### C. Rule 12(c) – Judgment on the Pleadings

---

[7] Federal Rule of Civil Procedure 12 (b) (1) provides: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction . . . ." Fed. R. Civ. P. 12(b)(1).

Defendants' motions to dismiss are filed under Federal Rule of Civil Procedure 12(c)[8] instead of Rule 12(b)(6) because Defendants filed an answer prior to the filing of the motions. ECF No. 35 at 1 n.1; ECF No. 40 at 1 n.1. Defendants assert, and Plaintiff acknowledges, that the standard of review applicable to a Rule 12(c) motion for judgment on the pleadings is the same as a motion to dismiss brought under Rule 12(b)(6). ECF No. 35 at 2; ECF No. 40 at 2-3; ECF No. 36 at 3; ECF No. 44 at 1. *See, e.g., Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) ("'A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion.'" (footnote omitted)); *Boone v. Solid Wood Cabinet Co., LLC*, Civ. No. 17-4323 (KM) (JBC), 2018 U.S. Dist. LEXIS 91980, at *4 (D.N.J. May 31, 2018) ("A motion for judgment on the pleadings is often indistinguishable from a motion to dismiss, except that it is made after the filing of a responsive pleading. Fed. R. Civ. P. 12(h)(2) 'provides that a defense of failure to state a claim upon which relief can be granted may also be made by a motion for judgment on the pleadings.' . . . Accordingly, when a Rule 12(c) motion asserts that the complaint fails to state a claim, the familiar Rule 12(b)(6) standard applies." (quoting *Turbe v. Government of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991))); *Ivers v. Brentwood Borough Sch. Dist.*, Civil Action No. 2:20-1244, 2021 U.S. Dist. LEXIS 36675, at *3 (W.D. Pa. Feb. 26, 2021) ("The primary distinction between motions under Rules 12(b)(6) and 12(c) is timing: if a motion is filed before an answer, it is a motion to dismiss; if it is filed after the answer, it is a motion for judgment on the pleadings. The distinction between these motions is merely semantic because the same standard of review generally applies to both." (citing *Turbe,* 938 F.2d at 428)). As the *Ivers* court notes, the only meaningful difference between the two motions "is not the standard of a court's review, but its scope. Unlike with motions to dismiss, a court reviewing a motion for judgment on the pleadings considers not only the complaint, but also the written answer and attachments to the pleadings." *Ivers*, 2021 U.S. Dist. LEXIS 36675, at *4. Thus,

> [a] motion for judgment on the pleadings should be granted if the movant establishes that "there are no material issues of fact, and he is entitled to

---

[8] Rule 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).

judgment as a matter of law." In considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party.

*Zimmerman*, 873 F.3d at 417-18 (footnotes omitted).

## III.   DISCUSSION

### A. Plaintiff's 12(b)(1) Motion to Dismiss Counterclaims

Because jurisdiction is fundamental and a threshold matter, the Court will address Plaintiff's motion to dismiss for lack of subject matter jurisdiction first. In this motion, Plaintiff mounts a facial challenge to jurisdiction. Plaintiff notes that the Counterclaim fails to include any basis for this Court's subject matter jurisdiction and disputes that Defendants' Counterclaim is properly before the Court, where diversity jurisdiction clearly is lacking. ECF No. 7 at 2. Defendants oppose the motion, arguing that the Court may exercise supplemental jurisdiction over the Counterclaim because Plaintiff's Complaint alleges federal claims, thereby conferring federal question jurisdiction upon this Court. ECF No. 12 at 2-3.[9]

Defendants' claim for declaratory relief in Count I of the Counterclaim is sought pursuant to the All Writs Act, codified at 28 U.S.C. § 1651(a). ECF No. 4 at 20, ¶ 53. Courts have widely held that the statute does not confer federal question jurisdiction on its own. *See, e.g., Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 33 (2002) (where the Supreme Court quotes the petitioners' brief approvingly: "[T]he All Writs Act 'does not, by its specific terms, provide federal courts with an independent grant of jurisdiction'"); *Gorgonzola v. Ahuja*, 2:10-cv-01768, 2022 U.S. Dist. LEXIS 47248, at *37-38 (W.D. Pa. Mar. 16, 2022) ("'The All Writs Act does not itself confer any subject matter jurisdiction, but rather only allows a federal court to issue writs "in aid of its existing jurisdiction". . . . [A] court has subject matter jurisdiction over an application for an All Writs Act order only when it has subject matter jurisdiction over the underlying order that the All Writs Act order is intended to effectuate.'" (quoting *United States v. Apple MacPro Computer*, 851 F.3d 238, 244 (3d Cir. 2017))); *Williams v. City of Philadelphia*, Civil Action No. 08-1979, 2010 U.S. Dist. LEXIS

---

[9] As Plaintiff states, Plaintiff and all Defendants are citizens of the U.S. Virgin Islands. Therefore, the Court lacks subject matter jurisdiction based upon diversity of citizenship. *See* ECF No. 7 at 2. Although not mentioned in Plaintiff's motion, the claims at issue clearly do not invoke admiralty/maritime jurisdiction. 28 U.S.C. § 1333.

76164, at *34 n.9 (E.D. Pa. July 27, 2010) (citing *Commercial Sec. Bank v. Walker Bank & Trust Co.*, 456 F.2d 1352, 1355 (10th Cir. 1972)).

At the same time, it is well recognized that courts have issued injunctions under the All Writs Act against "vexatious litigants." *See, e.g.*, *U.S. Bank Nat'l Ass'n v. Gunn*, Civ. No. 11-1155-RGA, 2012 U.S. Dist. LEXIS 36113, at *5 (D. Del. Mar. 16, 2012) (where the court declares that "the United States Court of Appeals for the Third Circuit has held that if a district court determines that a litigant's past and current lawsuits constitute a continuous pattern of 'groundless and vexatious litigation,' the All Writs Act permits the court, under exigent circumstances, to grant an Order enjoining the litigant from filing further actions without the permission of the Court" (citing *In re Oliver*, 682 F.2d 443, 445-46 (3d Cir. 1982))). In *In re Oliver*, the Third Circuit acknowledges that "[i]t is well within the broad scope of the All Writs Act for a district court to issue an order restricting the filing of meritless cases by a litigant whose manifold complaints raise claims identical or similar to those that already have been adjudicated." *In re Oliver*, 682 F.2d at 445. The court continues, "We agree with the First and District of Columbia Circuits . . . that a continuous pattern of groundless and vexatious litigation can, at some point, support an order against further filings of complaints without the permission of the court." *Id.* at 446. Thus, the Court finds that it has subject matter jurisdiction over Defendants' counterclaim insofar as it requests an injunction against Plaintiff as a "vexatious litigant."[10]

In contrast, Defendants' claim for defamation in Count II of their Counterclaim does not implicate federal question jurisdiction. Thus, the Court turns its attention to whether the Court may exercise of supplemental jurisdiction over this Count.

### 1. Compulsory counterclaims

Counterclaims are governed by Federal Rule of Civil Procedure 13.[11]  As set forth in the rule, there are two kinds of counterclaims: compulsory counterclaims and permissive

---

[10] Based upon Defendants' "prayer" that the "Court declare that the acts and omissions of Counter-defendant, Ms. Davis, constitute wrongful use of civil proceedings and malicious prosecution," ECF No. 4 at 21, ¶ A, Defendants' Count I of their Counterclaim also could be construed as an abuse of process claim. However, since Defendants cite *Gage v. Wells Fargo Bank, N.A.*, 555 Fed. App'x 148 (3d Cir. 2013), ECF No. 4 at 21, ¶ 54, in which the court affirms the issuance of an injunction pursuant to the All Writs Act against a "vexatious litigant," the Court will not discuss the alternative interpretation.

[11] Rule 13 provides, in relevant part:

counterclaims. *See id*. A compulsory counterclaim is one which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." *Id.* at 13(a). A permissive counterclaim is one which does not arise out of the same transaction or occurrence. *Id.* at 13(b). Moreover, "[a] compulsory counterclaim does not require an independent jurisdictional basis to be brought in federal court, even when it is purely a state-law claim." *Kimmel v. Cavalry Portfolio Servs., LLC*, 747 F. Supp. 2d 427, 431 (E.D. Pa. 2010) (citing *Ambromovage v. United Mine Workers of Am.*, 726 F.2d 972, 988 (3d Cir. 1984)); *see also, e.g., Castro v. All Around Fire Prot., LLC*, Case No. 21-60677-CIV-Dimitrouleas, 2021 U.S. Dist. LEXIS 235073, at *4 (S.D. Fla. Dec. 7, 2021) ("It is generally accepted that a compulsory counterclaim falls within the ancillary jurisdiction of the federal courts even if it would ordinarily be a matter for state court consideration." (citing *Plant v. Blazer Financial Services, Inc. of Georgia*, 598 F. 2d 1357, 1359 (5th Cir. 1979))).

Defendants assert that their claim for defamation should be considered compulsory because it "bear[s] a logical relationship to Plaintiff's claims." ECF No. 12 at 2. When determining whether a "logical relationship" exists between a state law counterclaim and a federal claim for purposes of Rule 13(a), the Third Circuit offers this guidance:

> The concept of a "logical relationship" has been viewed liberally to promote judicial economy. Thus, a logical relationship between claims exists where

---

(a) **Compulsory Counterclaim.**
    (1) *In General.* A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:
        (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
        (B) does not require adding another party over whom the court cannot acquire jurisdiction.
    (2) *Exceptions.* The pleader need not state the claim if:
        (A) when the action was commenced, the claim was the subject of another pending action; or
        (B) the opposing party sued on its claim by attachment or other process that did not establish personal jurisdiction over the pleader on that claim, and the pleader does not assert any counterclaim under this rule.
(b) **Permissive Counterclaim.** A pleading may state as a counterclaim against an opposing party any claim that is not compulsory.

Fed. R. Civ. P. 13(a)-(b).

> separate trials on each of the claims would "involve a substantial duplication of effort and time by the parties and the courts." *Id.* Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties.

*Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 389-90 (3d Cir. 2002) (quoting *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978)) (*cited in UMLIC VP LLC v. Belardo*, Civ. No. 2003/0037, 2003 U.S. Dist. LEXIS 24526, at *3 (D.V.I. May 8, 2003)); *see also Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961).

The Court believes that the issues of fact and law raised by Plaintiff's federal claims and Defendants' defamation claim are not similar or "logically related," that is, they do not involve the same factual and/or legal issues and trying them in a single trial would not promote judicial economy. *Simon v. Northwestern Univ.*, Case No. 15-cv-1433, 2017 U.S. Dist. LEXIS 123, at *14-15 (N.D. Ill. Jan. 3, 2017). The issues here are analogous to the ones presented to the District Court of Florida for the Southern Division in *Richardson v. Trainer*, Case No. 02-60117-CV-ALTONAGA/Bandstra, 2003 U.S. Dist. LEXIS 13829 (S.D. Fla. July 1, 2003), where the plaintiff brought federal Title VII and Fair Labor Standards Act (FLSA) claims against her employer and supervisor and the supervisor counterclaimed for slander and false light. There the court found that the state law counterclaims were not compulsory, stating,

> To determine whether or not a counterclaim is compulsory rather than permissive, the "logical relationship" test is used: "the same operative facts [must] serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Republic Health Corp. v. Lifemark Hosps., Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985). In the employment context, the mere fact that state law claims arise from the same employment relationship is not sufficient to make the claims compulsory.

*Richardson*, 2003 U.S. Dist. LEXIS 13829, at *11 (citations omitted). The court goes on to find:

> the facts underlying Trainer's counterclaims for slander and false light invasion of privacy are distinct from the facts underlying Richardson's Title VII and FLSA claims. The elements of proof for Trainer's Counterclaim would require evidence distinct from the evidence for Richardson's, sexual harassment, discrimination and overtime compensation claims. That the

> alleged tortious conduct on the part of the employee took place contemporaneously with the alleged harassment is only one factor to be considered in the "logical relationship" test. Thus, in *Rogers*, Case No. 97-7596-Civ, slip op. at 3, for example a supervisor's counterclaim for defamation which involved statements allegedly made by the plaintiff to co-workers while she was still employed by the company, was found to be permissive. In *Rogers*, as here, the facts underlying the plaintiff's claim, such as allegedly lewd remarks by the supervisor, unwanted advances and battery upon the plaintiff, were distinct from the facts underlying the counterclaims for defamation, which involved statements made to co-workers, notwithstanding the temporal proximity of the events alleged.

*Id.* at *13-14 (citing *Rogers v. Rinker Materials Corp.*, Case No. 97-7596-CIV-Ungaro-Benages, 1998 U.S. Dist. LEXIS 24303 (S.D. Fla. Aug. 7, 1998)). Similarly, in the matter at bar, the facts underlying Plaintiff's federal Title VII, Age Discrimination in Employment Act (ADEA), FLSA, and Equal Pay Act claims are distinct from facts surrounding the alleged defamatory statements.

The legal issues presented by the two claims also are distinct. For example, to prove her Title VII and ADEA discrimination claims, Plaintiff must show that she was terminated and/or harassed based upon her sex and/or age. To prove their counterclaim for defamation, Defendants must show that the alleged statements were false, that there was an unprivileged publication, that Plaintiff was at least negligent in making the alleged statements, and either special harm resulting from the alleged statements or that the statements were defamatory *per se*. *Kendall v. Daily News Publ. Co.*, 55 V.I. 781, 787 (2011) (*cited in Simpson v. Capdeville*, 64 V.I. 477, 488 (2016)).

Moreover, "[R]ule 13's plain language supports a determination that the Counterclaim is permissive." *Walker v. THI of New Mexico at Hobbs Ctr.*, 803 F. Supp. 2d 1287, 1322 (D.N.M. 2011) (where the court found that the defendant's counterclaim for abuse of process was not a compulsory counterclaim in the plaintiff's Title VII and retaliation case, stating, "While [Plaintiff] would not have filed her claims but for the alleged discrimination and retaliation, that relationship between the events does not make the events at issue in the Counterclaim and at issue in the Complaint . . . the same transaction or occurrence"). Here, the "transaction or occurrence," Fed. R. Civ. P. 13(a)(1)(A), giving rise to Defendants' defamation claim is the alleged published defamatory statements by Plaintiff to a third

person or persons, which is a different "transaction or occurrence" than that which forms the basis for Plaintiff's alleged discrimination, harassment, and wage claims, namely, Plaintiff's treatment during and termination from her employment. Because the Court finds that Defendants' claim for defamation in their Counterclaim is not compulsory, the Court cannot exercise jurisdiction over it under Rule 13(a).

### 2. Supplemental jurisdiction - 28 U.S.C. § 1367(a)

Section 1367(a) of Title 28 of the United States Code provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). Prior to the enactment of this statute, all counterclaims deemed to be permissive required an independent basis of subject matter jurisdiction. As one district court observed:

> [The Supreme Court in] *Exxon Mobil Corp.* indicates that § 1367(a) does not merely codify the common law. Indeed, federal appellate courts have since held that "§ 1367 supersedes case law on supplemental jurisdiction that had distinguished between compulsory and permissive counterclaims." *Global NAPS, Inc. v. Verizon New England Inc.*, 603 F.3d 71, 87 (1st Cir. 2010); *see also Jones v. Ford Motor Credit Co.*, 358 F.3d 205 (2d Cir. 2004); *Channell v. Citicorp Nat. Servs., Inc.*, 89 F.3d 379 (7th Cir. 1996).

*Bates v. American Credit Acceptance, LLC*, Case No. 16-12239, 2016 U.S. Dist. LEXIS 134261, at *5 (E.D. Mich. Sept. 29, 2016). Since the statute was enacted, courts have applied it broadly to extend supplemental jurisdiction over some permissive counterclaims, as well. For example, in *Alpern v. Cavarocchi*, Civil Action No. 98-3105, 1999 U.S. Dist. LEXIS 5929 (E.D. Pa. April 28, 1999), the court states:

> While a compulsory state law counterclaim is undoubtedly within the Court's supplemental (i.e., ancillary) jurisdiction, it does not necessarily follow that a "permissive" state law counterclaim is outside the Court's jurisdiction. . . . The question with regard to supplemental jurisdiction is whether the state law counterclaim claim shares a "common nucleus of operative fact" with the underlying federal claim. . . . Section 1367(a) . . . simply asks whether any state

> law claim is "so related to claims in the action within [the court's] original jurisdiction" that they form part of the same case or controversy.

*Id.* at \*33-34. *See also Castro*, 2021 U.S. Dist. LEXIS 235073, at \*5 (where the Court declares that the "standard for asserting supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) is broader than the standard for determining a counterclaim to be compulsory. . . . 'Thus there will be some permissive counterclaims over which the court has supplemental jurisdiction and some it does not'" (quoting *Bakewell v. Federal Fin Grp., Inc.*, Civil Action No. 1:04-CV-3538-JOF, 2006 U.S. Dist. LEXIS 23073, at \*10 (N.D. Ga. Mar. 21, 2006))); *Bates*, 2016 U.S. Dist. LEXIS 134261, \*6-7 (where the court follows other Sixth Circuit district courts holding that "there is no requirement that the counterclaim be compulsory to fall within the scope of § 1367(a). '[A] district court's jurisdiction over a counterclaim no longer depends on whether the counterclaim arises from the "same transaction or occurrence" as the principal claim. Rather, the test is whether the claims are so related that they form part of the same case or controversy under Article III of the Constitution'") (citations omitted)).

Even though Section 1367(a) allows the Court to exercise supplemental jurisdiction over what previously may have been considered "permissive" counterclaims, it is important to remember that the "touchstone for supplemental jurisdiction is whether the state law claims 'share a "common nucleus of operative fact[s]" with the claims that supported the district court's original jurisdiction.'" *Slater v. Yum Yum's 123 ABC*, Civil No. 2:20-cv-00382-JMG, 2021 U.S. Dist. LEXIS 101251, at \*3 (E.D. Pa. May 28, 2021) (citing *Troncone v. Velahos*, Civil No. 10-2961 (RMK/AMD), 2011 U.S. Dist. LEXIS 82672, at \*17 (D.N.J. July 28, 2011) (quoting *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 308 (3d Cir. 2003))).

In reviewing whether the Court may exercise Section 1367(a) supplemental jurisdiction over Defendants' defamation claim, the Court notes that courts who have addressed this issue in similar factual contexts are split. *Compare Sky R. v. Haddonfield Friends Sch.*, Civil Action 14-5730, 2016 U.S. Dist. LEXIS 43002 (D.N.J. Mar. 31, 2016) (where the court exercised supplemental jurisdiction over the defamation counterclaim in a federal Americans with Disabilities Act (ADA) case) and *Lane v. Forever of PA, Inc.*, Civil Action 3:15-62, 2015 U.S. Dist. LEXIS 173755 (W.D. Pa. Dec. 30, 2015) (where the court declared, without analysis, that the state law counterclaims, including a claim for defamation, "are based on the

same facts as those underlying Plaintiff's federal [Title VII] claims" and it would exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the counterclaims) *with Richardson v. Trainer*, Case No: 02-60117-CIV-Altonaga/Bandstra, 2003 U.S. Dist. LEXIS 13829 (S.D. Fla. July 1, 2003) (where the court declined to exercise supplemental jurisdiction over a defamation counterclaim in a federal age discrimination case) and *Singh v. George Washington Univ.*, 368 F. Supp. 2d 58 (D.D.C. 2005) (where the court found no supplemental jurisdiction over the defamation counterclaim filed against a plaintiff claiming discrimination under the ADA).

Courts in the Third Circuit appear to align with the majority of courts that find a counterclaim alleging that the plaintiff defamed the defendant by publishing statements concerning facts underlying the plaintiff's Title VII discrimination and harassment complaint is part of the same case or controversy as the federal claims sufficient to exercise Section 1367(a) supplemental jurisdiction. For example, the *Sky R* court, in finding that the defamation counterclaim derives from the same nucleus of operative facts as the plaintiff's ADA discrimination claims, states:

> While Plaintiffs' claims are federal civil rights claims and Defendant's proposed claim is a state defamation claim, the claims share the same factual underpinnings: the environment at HFS while Sky was a student, the treatment of Sky while a student at HFS and his ultimate expulsion. The letter distributed by Angela and Richard contained statements that flow largely from the allegations in the Complaint, and, additionally, they attached a copy of the Complaint to the letter. Indeed, in proving the defamation claim, Defendant would need evidence establishing the falsity of the statements by Angela and Richard, statements which are directly related to the factual allegations in this litigation. Thus, while it is true, as argued by Plaintiffs, that there are additional elements of the defamation claim and, as a result, additional facts necessary to establish, for instance, harm to HFS's reputation, the Third Circuit does not require total congruity between the operative facts, just more than a mere tangential overlap.

*Sky R.*, 2016 U.S. Dist. LEXIS 43002, at *11 (citation omitted). Here, Plaintiff's federal claims center on the environment at Sun Dog and her treatment as an employee. Defendants' defamation claim is based upon alleged published statements by Plaintiff about those same issues, and, like the defendants in *Sky R.*, to maintain their claim for defamation, Defendants

will need to establish the falsity of Plaintiff's statements,[12] "statements which are directly related to the factual allegations in this litigation." *Id.* Applying the reasoning of our sister Third Circuit court, the Court finds that it has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Defendants' defamation claim in Count II of their Counterclaim.

The Court has found herein that it may exercise subject matter jurisdiction over Defendants' request for an "vexatious litigant" injunction pursuant to the authority granted in the All Writs Act. It also finds supplemental jurisdiction under 28 U.S.C. § 1367(a) over Defendants' claim for defamation. Consequently, the Court will deny Plaintiff's 12(b)(1) Motion to Dismiss Counterclaims (ECF No. 7).

### B. Plaintiff's 12(b)(6) Motion to Dismiss Counterclaims

The Court now analyzes whether the Counterclaim should be dismissed for failing to state claims upon which relief can be granted.

### 1. Counterclaim I - "Vexatious Litigant" Injunction

The Court is mindful of the Third Circuit's caution that an injunction issued pursuant to the All Writs Act proscribing a plaintiff from filing further documents or from initiating litigation altogether "'is an extreme remedy, and should be used only in exigent circumstances.'" *Sassower v. Abrams*, No. 91-8063, 1992 U.S. App. LEXIS 38245, at *3 (3d Cir. 1992) (quoting *In Re Oliver,* 682 F.2d 443, 445 (3d Cir. 1982)).

The Third Circuit also has provided the following guidance regarding when a district court may issue such an injunction: "(1) the litigant must be continually abusing the judicial process; (2) the litigant must be given notice of the potential injunction and an opportunity to oppose the court's order; and (3) the injunction must be narrowly tailored to fit the specific circumstances of the case." *Grossberger v. Ruane*, 535 Fed. App'x 84, 86 (3d Cir. 2013) (citing *Brow v. Farrelly*, 994 F.2d 1027, 1038, 28 V.I. 345 (3d Cir. 1993)).

---

[12] Defendants maintain in their opposition to Plaintiff's 12(b)(6) motion to dismiss that "Plaintiff bears the burden of proving the truth of her statement." ECF No. 19 at 11. However, as the cases cited by Defendants note, "[t]ruth is an absolute *defense* to a defamation claim . . . ." *Flanders v. Shell Seekers, Inc.*, 39 V.I. 63, 69 (Terr. Ct. 1998) (emphasis added). Thus, Plaintiff bears that burden if she raises that defense. *Id.* It goes without saying, however, that Defendants have the burden of proof to establish all the elements of their defamation claim, including the falsity of the published statement.

Defendants claim that they "are aware of ***at least five (5) other employers*** who have had EEOC claims and/or litigation brought against them." ECF No. 4 at 18, ¶ 27 (emphasis and bold in original). They further allege:

> For each of these five claims of discrimination Ms. Davis engaged the services of Attorney Peter Lynch. Ms. Davis and Attorney Lynch are working in concert to file a series of frivolous and vexatious litigations made in bad faith and without probable cause. The baseless lawsuits and EEOC charges filed by Ms. Davis and Attorney Lynch establish a pattern of behavior in which Ms. Davis works for a few days or weeks, quits her job, and then files baseless claims of discrimination in the hopes of a settlement.

*Id.* at 19, ¶¶ 40-42.

Even if some of the allegations contained in the other EEOC charges and lawsuits are worded similarly to the ones asserted against Defendants by Plaintiff, *see id.* at 18-19, the Court finds that Defendants have not shown that Plaintiff's claims in this matter are "frivolous or meritless."[13] *See, e.g., Lin v. Neuner & Ventura LLP*, Civil Action No. 17-732 (MAS), 2017 U.S. Dist. LEXIS 149380, at *8 (D.N.J. Sept. 14, 2017) (where the court advises, "The injunction, however, should only apply to frivolous or meritless claims, not legitimate claims" (citing *In re Packer Ave. Assocs.*, 884 F. 2d 745, 747 (3d Cir. 1989)); *In re Oliver*, 682 F.2d at 446 (noting that "[a]ccess to the courts is a fundamental tenet of our judicial system; legitimate claims should receive a full and fair hearing no matter how litigious the plaintiff may be").

The Court also finds that Defendants have not shown that Plaintiff has "continually abused the judicial process." An EEOC charge initiates an administrative process, not a judicial one. As Defendants concede, Plaintiff did not file lawsuits against all the other alleged employers. ECF No. 4 at 18, ¶ 33. Moreover, while the copies of EEOC charges and civil complaint attached to the Counterclaim allege sex discrimination and harassment, beyond the types of claims asserted, the underlying individual allegations are different from the allegations set forth in the matter at bar. Plaintiff herein also alleges wage and other claims

---

[13] For further explanation, *see* the Court's findings regarding Defendants' motions to dismiss *infra*. Additionally, Defendants fail to show that the mere issuance of a "right to sue" letter from the EEOC or a termination of the EEOC case constitutes a finding by the agency that the charge is baseless or meritless.

distinct from the discrimination and harassment claims that are not asserted in the other cases.

The number of cases, each of which are distinguishable from each other, also are not so numerous to support a finding of "continual abuse." For example, in *In re Oliver*, where the court ultimately declined to issue an injunction because the *pro se* litigant had not been granted an opportunity to be heard, the alleged vexatious litigant had filed "51 cases in the district court, none of which were deemed sufficient to warrant a hearing." *In re Oliver*, 682 F.2d at 444. Similarly, in *In re Shemonsky*, 3:MI 03-0008, 2003 U.S. Dist. LEXIS 28970 (M.D. Pa. Jan. 16, 2003), the court imposed an injunction only after the litigant had initiated ten actions in that court, as well as several in other courts, and "no less than thirty separate proceedings with the Court of Appeals for the Third Circuit." *Id.* at *1, 3, and 7. The court also noted that the actions relitigated issues decided long ago. *Id.* at *8. *See also Sassower*, 1992 U.S. App. LEXIS 38245 at *3 ("When a litigant or appellant continually 'raise[s] claims identical or similar to those that have already been adjudicated, . . . the interests of repose, finality of judgments, protection of defendants from unwanted harassment, and concern for maintaining order in the court's dockets have been sufficient to warrant such prohibition.'" (quoting *In Re Oliver,* 682 F.2d at 445.)). In terms of frequency or number of proceedings, this case is more like *Brow v. Farrelly*, where the Third Circuit Court of Appeals vacated an injunction:

> There is no evidence in the record to demonstrate that Brow is an abusive litigant who repeatedly files baseless actions. There is also no evidence supporting any determination that Brow continually has attempted to relitigate adjudicated claims. Hence, there appear to be no exigent circumstances to warrant the imposition of the injunction.

*Brow*, 994 F.2d at 1038-39. In a footnote, the court states that it found four cases filed by Brow. *Id.* at 1039 n.13. Because the Court finds that Defendants have failed to plausibly allege that Plaintiff is a "vexatious litigant," Count I of their Counterclaim fails and must be dismissed.

### 2. Counterclaim II - Defamation

As Plaintiff recites in her motion:

> In the Virgin Islands, a claim of defamation requires: "(a) a false and defamatory statemen concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."

*Kendall v. Daily News Publ. Co.*, 55 V.I. 781, 787 (Sup. Ct. 2011) (*cited in Simpson v. Capdeville*, 64 V.I. 477, 488 (Sup. Ct. 2016)).[14] Plaintiff argues, primarily, that Defendants' allegations of harm are "mere recitations of the harm element of the count, made without factual support." ECF No. 6 at 6-7, ¶ 3. Plaintiff also alleges that Defendants are "public figures"; therefore, they must plead and show that any defamatory statement was made with "actual malice." *Id*. at 8, ¶ 5. Finally, Plaintiff asserts her First Amendment right to free speech and "maintains that any statements she made to third parties were true." *Id*. at 8, ¶ 8. Defendants oppose the motion on the grounds that they have sufficiently pled a claim for defamation and further contend that: 1.) they are not public figures, 2.) Plaintiff bears the burden of proving that the alleged defamatory statement is true, 3.) Plaintiff's publication to a third-party, specifically Harith Wickrema, was unprivileged, 4.) Plaintiff was at least negligent in making the statement, and 5.) the statement constituted defamation *per se* and thus, is actionable without a showing of special harm. ECF No. 19 at 11-15.[15]

With respect to the first element, "only statements that are 'provable as false' are actionable; hyperbole and expressions of opinion not provable as false are constitutionally protected." *Kendall*, 55 V.I. at 788 (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990)). In support of their claim, Defendants allege that:

> [p]rior to and after Ms. Davis left her job at Sun Dog Café, she made numerous statements about her employers, co-workers, conditions of employment, and Counter-claimants that were false and misleading. Ms. Davis published false complaints and defamatory statements to non-privileged third parties including but not limited to Harith Wickrema. Such statements, including that Counter-claimants are "crooks" and "stealing from their employees" . . . .

---

[14] A statement is "defamatory" only "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." RESTATEMENT (SECOND) OF TORTS § 559.

[15] Defendants also note that Plaintiff's motion mentions that their defamation claim might be barred by the statute of limitations. ECF No. 19 at 10 (citing ECF No. 6 at 8).  The Court accepts Defendants' representation that the alleged defamatory statement to Harith Wickrema was made sometime in or after December 2019. Thus, the claim was asserted within the two-year statute of limitations.

ECF No. 4 at 21, ¶¶ 56-58. The Court considers the allegation "numerous statements about her employers, co-workers, conditions of employment, and Counter-claimants that were false and misleading" to be too vague to be a basis for a claim for defamation. The next allegations state that Plaintiff "published false complaints and defamatory statements to non-privileged third parties including but not limited to Harith Wickrema. Such statements, including that Counter-claimants are 'crooks' and 'stealing from their employees' [sic]."

Defendants provide no context or additional language allegedly used by Plaintiff when making the alleged defamatory statements. Even in the absence of any additional information, the Court finds that Plaintiff's alleged statement that Defendants are "crooks" is an expression of an opinion. The alleged statement is comparable to the statements presented in *Simpson*, where the lawyer-plaintiff in the original action brought a defamation claim against the defendant for publishing statements online, ranging "from accusing Capdeville of being a 'liar' who has 'proven himself to be dishonest,' to statements referring to Capdeville as a 'disgrace'" a 'danger,' and insisting that his conduct 'was so terrible' that it 'should be used . . . as an example of what Lawyers should not do.'" *Simpson*, 64 V.I. at 488. The *Simpson* court concluded "as a matter of law that all of Simpson's statements are opinions representing subjective viewpoints that cannot be proved as false. Instead, they clearly represent personal opinions and beliefs." *Id.* (citation omitted). *See also James v. San Jose Mercury News, Inc.*, 20 Cal. Rptr. 2d 890, 896-98 (Cal. Ct. App. 1993) (where the court found that an article describing a lawyer as engaging in "sleazy, illegal, and unethical practice" fell into protected zone of "imaginative expression" or "rhetorical hyperbole"); *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 284-86 (1974) (where the court held that the use of the word "traitor" could not form the basis of a defamation action since it was used "in a loose, figurative sense" and was "merely rhetorical hyperbole, a lusty and imaginative expression of . . . contempt"). Consequently, here, the Court deems the word "crooks" as an imaginative expression of Plaintiff's opinion.

Conversely, the Court determines that Plaintiff's alleged statement that Defendants are "stealing from their employees," if believed, could tend to "harm the reputation of [Defendants] as to lower [the]m in the estimation of the community or to deter third persons

from associating or dealing with [the]m." RESTATEMENT (SECOND) OF TORTS § 559. *See, e.g.,*
*Wentworth-Douglass Hosp. v. Young & Novis P.A.*, Case No. 10-cv-120-SM, 2011 U.S. Dist.
LEXIS 11313, at *26 (D.N.H. Feb. 4, 2011) (where the court states, "When a person says that
another person stole something, the accusation, if believed, would "tend to lower the
[accused thief] in the esteem of any substantial and respectable group" (citation omitted)).
Thus, even without knowing the context or additional or qualifying language, the statement
could be actionable, that is, it could be provable as false. Thus, the Court finds that
Defendants have adequately alleged the first element of a claim for defamation regarding the
alleged statement that Defendants were "stealing from their employees."

Plaintiff does not oppose Defendants' allegations regarding the second element of the
tort, that is an unprivileged publication of the alleged defamatory statements to a third party,
instead arguing that the statements she made were true and not defamatory. *See* ECF No. 6
at 8, ¶ 8.

The third element of the tort generally is described as "fault." *Joseph v. Daily News*
*Publishing Co., Inc.*, 57 V.I. 566, 586 (Sup. Ct. 2012).

> The level of fault varies with the parties to the defamation action, but the
> Restatement employs the minimum standard in its general definition of
> defamation. That minimum standard is, "fault amounting to at least negligence
> on the part of the publisher." RESTATEMENT (SECOND) OF TORTS § 558(c). It is the
> element of fault that is given a higher threshold when the defendant in a
> defamation action is a public official or public figure and the defamatory
> statements reference matters of public concern.

*Id.* at 586-87. Plaintiff claims that Defendants are "public figures," ECF No. 6 at 8, ¶ 5, and
that they "fail to plead the necessary element of actual malice required for defamation of a
public figure. *Id.* As noted by the Supreme Court of the Virgin Islands in *Kendall*:

> [T]he Constitution "prohibits a public official from recovering damages for a
> defamatory falsehood relating to his official conduct unless he proves that the
> statement was made with 'actual malice.'" *New York Times Co. v. Sullivan*, 376
> U.S. 254, 279-80, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). Actual malice is a
> statement made "with knowledge that it was false or with reckless disregard
> of whether it was false." *Id.* at 280.

*Kendall*, 55 V.I. at 788. Notwithstanding the fact that Defendants Barry are business owners
and arguably prominent residents of St. Thomas, the Court finds that they are not public

figures; therefore, they are not required to allege "actual malice" to state a plausible claim for defamation. Moreover, Plaintiff does not counter that she was at least negligent in making the alleged defamatory statement. Again, she maintains that the statements she made were true and not defamatory. *See* ECF No. 6 at 8, ¶ 8.

The fourth element of the claim is "either the actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." RESTATEMENT (SECOND) OF TORTS § 558(d). The Restatement defines "special harm" as "the loss of something having economic or pecuniary value . . . [which] must result from the conduct of a person other than the defamer or the one defamed and must be legally caused by the defamation." RESTATEMENT (SECOND) OF TORTS § 575, comment b (*quoted in Joseph*, 57 V.I. at 587). An actionable statement irrespective of special harm is defamation *per se*. One category of defamation *per se* is set forth in Section 573 of the Restatement (Second) of Torts, which provides:

> One who publishes a slander that ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession, or of his public or private office, whether honorary or for profit, is subject to liability without proof of special harm.

RESTATEMENT (SECOND) OF TORTS § 573.

Plaintiff contends that Defendants "have not satisfied the element of harm." ECF No. 6 at 6-7, ¶ 3. Plaintiff then cites the definition of defamation *per se* and declares that Defendants have failed to "include factual support which would support a basis for a claim of defamation *per se*." ECF No. 6 at 7, ¶ 4. Defendants oppose dismissal, asserting that Plaintiff's alleged published defamatory statements

> imputed misconduct in the way the restaurant was run and the integrity of the owners. Any reasonable person listening to Plaintiff's statements would have been prejudiced in their opinion of Sun Dog Café and the Barrys and deterred from frequenting the restaurant or seeking employment there. As such, Plaintiff's statements were defamatory per se and special damages are not required.

ECF No. 19 at 14-15. The Court has found herein that Plaintiff's alleged statement that Defendants are "stealing from their employees" could, if believed, constitute an actionable statement for a claim of defamation. *See supra* p. 21. Treating the allegations of the

Counterclaim as true and construing them in a light most favorable to Defendants, the Court further finds that Defendants have sufficiently alleged that the defamatory statement is actionable *per se* because, as Defendants claim, the defamation was "detrimental to [Defendants'] reputation in the community and the restaurant and hospitality industry" and resulted in "damage to their business and to their professional reputation." ECF No. 4 at 22, ¶¶ 58 and 61. *Island Airlines, LLC v. Bohlke*, Case No. SX-2016-CV-00404, 2022 VI SUPER 20 at *115-116 (Feb. 14, 2022) (where the court opines, "Since the alleged statements here concern Bohlke Defendants' business, the statements may be deemed actionable *per se* without an allegation of special damages. Therefore, the Court finds that Count VIII has been adequately pled and Plaintiffs' Motion for Dismissal or a More Definite Statement will be denied as to Count VIII"). Based upon the foregoing, the Court finds that Defendants have alleged facts sufficient to state a plausible claim for defamation.

Because the Court finds that Defendants have not alleged adequate facts to entitle them to a "vexatious litigant" injunction, the Court will grant Plaintiff's motion to dismiss for failure to state a claim regarding that count of the Counterclaim. The Court will deny the motion as to Defendants' count for defamation as it relates to Plaintiff's alleged statement that Defendants are "stealing from their employees."

### C. Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(c)

The Court now turns to Defendants' 12(c) motion for judgment on the pleadings. ECF No. 34. In this motion, Defendants attack eight of the 11 counts of Plaintiff's Complaint. The Court addresses each count *seriatim*.

#### 1. Count I -- Wrongful Termination under Title VII of the Civil Rights Act of 1964

Title VII of the United States Civil Rights Act makes it unlawful for an employer "to discriminate against any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Defendants argue that Plaintiff has failed to state a claim for sex-based discrimination under Title VII because she has not demonstrated an "adverse employment action" nor does she demonstrate that other similarly situated male employees were treated more favorably than she. ECF No. 35 at 6-7.

It is well established that the elements of a *prima facie* case of discrimination under Title VII include that the plaintiff 1.) is a member of a protected class, 2.) is qualified for the position, 3.) suffered an adverse employment action, and 4.) the circumstances of the adverse employment action give rise to an inference of discrimination. *See, e.g., Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Defendants cite to the *McDonnell Douglas* burden-shifting framework in their assessment of Plaintiff's claim. However, it is important to note that a plaintiff need not establish the elements of a *prima facie* case to survive a motion to dismiss. *Bethea v. Merchants Com. Bank*, Civil Action No. 11-51, 2011 U.S. Dist. LEXIS 118570, at *13-14 (D.V.I. Oct. 13, 2011); *see also, e.g., Mercurio v. GSIRM Holdings, Inc*., Case No. 2:21-cv-729-SPC-NPM, 2022 U.S. Dist. LEXIS 55687, at *5 (M.D. Fla. Mar. 22, 2022) (where the court explains, "[T]the prima face case for discriminatory employment decisions 'is an evidentiary standard, not a pleading requirement.' . . . This means a plaintiff need not 'establish a prima facie age-discrimination [or sex discrimination] case in order to survive a Rule 12(b)(6) motion to dismiss'" (citations omitted)). Nevertheless, "a plaintiff must still aver 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements.'" *Clouser v. Hanover Foods Corp*., Civil Action No. 1:21-cv-1148, 2022 U.S. Dist. LEXIS 79463, at *14 (M.D. Pa. May 2, 2022) (quoting *Connelly v. Lane Constr. Corp*., 809 F.3d 780, 788-89 (3d Cir. 2016)) (internal quotation omitted).

Here, Defendants do not contest, and the Court finds, that Plaintiff adequately alleges that she is a member of a protected class and that she is qualified for the position she held with Sun Dog. Compl. at ¶¶ 17, 21-24. With regard to the third element, Plaintiff alleges that she was terminated from her employment with Sun Dog on January 7, 2019. *Id*. at ¶ 12. Defendants argue that Plaintiff did not suffer an adverse employment action because she was not terminated, but, rather, she "abandoned" her job. ECF No. 35 at 7-8. Because the Court accepts the non-conclusory allegations of the complaint as true and draws all reasonable inferences in Plaintiff's favor, the Court finds Plaintiff's allegations concerning how her employment with Sun Dog ended sufficient to allege an adverse employment action. At the same time, however, the Court finds that Plaintiff fails to allege sufficient facts regarding the

fourth element, namely, that the circumstances surrounding her termination raise an inference of discrimination, to maintain her claim of sex discrimination under Title VII.

As far as the Court is able to discern, the only facts offered by Plaintiff to support her claim that she was terminated on the basis of her sex (Compl. at ¶¶ 76 and 88), are the allegations that two other employees, namely Jennifer Montgomery and Chris Metting were allowed to leave work for over a month and return to work without negative repercussions. *Id*. at ¶¶ 58-60. Plaintiff states that one of these employees is a woman. *Id*. at ¶ 60. The fact that one of her comparators is a woman, a member of the same protected class who was arguably treated more favorably than Plaintiff, undercuts Plaintiff's claim that she was unlawfully terminated based upon her sex.[16] *See, e.g., Real-Loomis v. The Bryn Mawr Trust Co*., Civil Action No. 20-0441, 2021 U.S. Dist. LEXIS 90234, at *10-11 (E.D. Pa. May 12, 2021) ("'As an alternative to the original fourth prong of the prima facie case, a plaintiff may show that similarly situated individuals outside the plaintiff's class were treated more favorably.'") (citations omitted)). Thus, the Court finds that Plaintiff has not stated a plausible claim of sex discrimination pursuant to Title VII, and the Court will grant Defendants' motion as to Count I of the Complaint.

### 2. Count II -- Sexual Harassment under Title VII of the Civil Rights Act of 1964

The Court construes this claim as one for hostile work environment. *See, e.g., Whetstine v. Woods Servs*., Civil Action No. 21-02289, 2022 U.S. Dist. LEXIS 12893, at *14 (E.D. Pa. Jan. 24, 2022) (where the court states, "[T]here are two types of sexual harassment that are actionable under Title VII: 1) hostile work environment and 2) quid pro quo sexual harassment") (citations omitted)). To succeed on a hostile work environment claim, as the Third Circuit Court of Appeals has articulated, "the plaintiff must establish that 1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5)

---

[16] In addition, the employees identified by name in paragraph numbered 62 of the Complaint, whom Plaintiff alleges were allowed "to switch shifts more than on a 'one-time basis,'" are all women, as confirmed by Defendants. *See* ECF No. 35 at 9.

the existence of *respondeat superior* liability." *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citations omitted). Defendants maintain that Plaintiff's claim must be dismissed because she has "failed to identify behavior that constitutes severe or pervasive harassment." ECF No. 35 at 10.[17]

Even though Plaintiff fails to document each incident of the alleged harassment, Plaintiff specifically describes one comment directed at her by Defendant Michael Barry, when he allegedly told another employee that he "liked the way Plaintiff's shorts looked on her butt," and the other employee's response (Compl. at ¶ 33) that could constitute sexual harassment. Plaintiff also alleges several messages sent by Defendant Michael Barry and other employees in the "Sun Dog Staff Chat" that are sexual in nature. Compl. at ¶¶ 34-35. Further, Plaintiff alleges that "[d]uring her work shifts, [she] also was subjected to overhearing sexually explicit language and witnessing vulgar and sexually offensive actions by managers and employees of [Sun Dog]." *Id.* at ¶ 38. Finally, Plaintiff alleges that the Sun Dog "workplace became sexually and psychologically intolerable for Plaintiff" and that the "environment adversely affected Plaintiff's wellness and caused Plaintiff significant distress." *Id.* at ¶¶ 42 and 81.

It is true that "[n]ot every sexual comment, action or joke creates a hostile work environment." *Brown-Baumbach v. B&B Auto, Inc.*, 437 F. App'x 129, 133 (3d Cir. 2011) *(quoted in Martone v. Jet Aviation Flight Servs.*, Case No. 2:19-cv-21011, 2021 U.S. Dist. LEXIS 79318, at *23 (D.N.J. Apr. 26, 2021)). It is also true that "[c]ourts apply the totality of the circumstances test, which involves analyzing 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"

---

[17] Defendants also spend a considerable amount of time arguing that Plaintiff fails to establish that the harassment was so severe and pervasive that it "change[d] the conditions of her employment." ECF No. 35 at 9-13. However, this so-called second element of a prima facie case as identified by Defendants is not an element requiring a showing separate from the "severe and pervasive" element. The elements of a prima facie case for hostile work environment are those as stated herein. And, as explained *infra*, the "severe and pervasive" element of the case is so fact-intensive that the better practice is not to dismiss the claim at this stage of the proceedings. Because Defendants do not argue that Plaintiff has failed to show the other four elements of a Title VII sexual harassment claim, and, given the standard for deciding motions to dismiss for failure to state a claim, the Court finds that Plaintiff has alleged sufficient facts regarding elements 1 and 3-5, as pronounced by the *Mandel* court.

*Martone*, 2021 U.S. Dist. LEXIS 79318, at*23 (citing *Mandel*, 706 F.3d at 168; *Hetzel v. Mabus*, Civ. A. No. 157271, 2016 U.S. Dist. LEXIS 102212, 2016 WL 4157311, at *3 (D.N.J. Aug. 4, 2016)). Moreover, because "determining whether harassing conduct is sufficiently severe or pervasive is a highly fact-intensive inquiry, . . . courts have continually 'shown a reluctance to dismiss a complaint at the [motion to dismiss] stage when the primary challenge to the hostile work environment claim is whether or not the conduct in question is severe and/or pervasive.'" *Ingram v. Vanguard Grp, Inc.*, Civil Action No. 14-3674, 2015 U.S. Dist. LEXIS 93016, at *53-54 (E.D. Pa. July 17, 2015) (citations omitted) (*quoted in Moore v. Lower Frederick Twp.*, Civil Action No. 20-5920, 2022 U.S. Dist. LEXIS 38302, at *29-30 (E.D. Pa. Mar. 4, 2022)).

At this juncture, viewing the allegations in the complaint in a light most favorable to Plaintiff, and taken collectively, the Court finds that Plaintiff has alleged enough facts to state a plausible claim for hostile work environment under Title VII. Consequently, the Court will deny the motion for judgment on the pleadings as to this count of the Complaint.

### 3. Count III -- Wrongful Termination, Sexual Harassment and Discrimination under 24 V.I.C. §§ 451(a) and 453[18]

In the absence of specific, controlling Virgin Islands caselaw, the Court is guided by federal Title VII analysis in its consideration of Plaintiff's discrimination claims brought under 24 V.I.C. § 451(a). *Mercer v. Government of the Virgin Islands*, Civil No. 2014-50, 2016 U.S. Dist. LEXIS 135645, at *23-27 (D.V.I. Sept. 30, 2016). In view of the Court's foregoing Title VII analysis to Plaintiff's claims of wrongful termination and harassment based upon sex and because of the similarity of the proscribed conduct found in Section 451(a)(1) to that regulated by Title VII, the Court will grant Defendants' motion regarding the claim for wrongful termination based upon sex as provided in Section 451(a)(1), but will deny the motion, and allow Plaintiff to pursue her claim, as to the claim of sexual harassment under Section 451(a)(2).[19]

---

[18] These statutes are part of the Virgin Islands Discrimination in Employment Act (VIDEA) codified at Chapter 17 of Title 24 of the Virgin Islands Code.

[19] The *Mercer* court held that the 2011 amendment to the statute should be read to include the original language of Section 451(a) and not only the additional language added by the amendment. Subparagraph 2 of 451(a) is similar to the language of Title VII at 42 U.S.C. § 2000(e)(2) that encompasses discriminatory employment practices other than hiring and/or firing and relied upon for claims sounding in hostile work environment.

This count of the Complaint brings claims of sex discrimination specifically pursuant to 24 V.I.C. § 453, as well as 24 V.I.C. § 451(a). Section 453 provides:

> (a) Any person claiming to be aggrieved by an alleged unlawful employment practice or discrimination may file with the department a verified complaint in writing which shall state the name and address of the person, employer, or employment agency alleged to have committed the unlawful practice or discrimination complained of and which shall set forth the particulars thereof and contain such other information as may be required by the department. The Attorney General may, in like manner, make, sign and file such complaint. (b) No complaint shall be filed after the expiration of one hundred and eighty days after the alleged act of unlawful employment practice or discrimination.

24 V.I.C. § 453. The Court agrees with Defendants' contention that Section 453 does not create a cause of action; rather, it outlines the procedural requirements for filing a discrimination complaint. *See* ECF No. 35 at 4 n.2. The statute states that an individual *may* file a complaint "with the department." The preceding section, Section 452, specifies that the enforcing "department" is the Virgin Islands Department of Labor. 24 V.I.C. § 452. Thus, even if Section 453 created a private cause of action, this Court is the improper forum for such a claim. Further, subparagraph (b) of section 453 specifies a 180-day limit for filing a complaint "with the department." More than 180 days elapsed between the date of Plaintiff's alleged termination and the filing of her complaint with the Superior Court of the Virgin Islands.[20] The Court concludes that any claim brought pursuant to Section 453 not only is improperly before the Court, but also is time-barred. Therefore, the Court will grant Defendants' motion as to this part of Count III.

### 4. Count IV -- Employment Discrimination in Violation of 10 V.I.C. § 64(1)(a) and Count V -- Sexual Harassment in Violation of 10 V.I.C. § 64a[21]

Defendants put forth similar arguments against Plaintiff's claims under the Virgin Islands Civil Rights Act as they do regarding Plaintiff's Title VII and VIDEA claims. Specifically, Defendants maintain that Plaintiff has not suffered an "adverse employment action nor has she alleged any difference in her compensation, term, conditions, or privileges

---

[20] Plaintiff alleges her termination date was January 7, 2019. Compl. at ¶ 12. She filed her complaint with the Superior Court on October 15, 2020. *See* Verified Complaint (ECF No. 1-1).
[21] These statutes are part of the Virgin Islands Civil Rights Act codified at Chapters 1-9 of Title 10 of the Virgin Islands Code.

of employment." ECF No. 35 at 14.[22] The Court has stated herein that Plaintiff adequately alleges that she was terminated. *See supra* p. 24-25. The Court also has found herein that the complaint states a plausible claim for sexual harassment or "hostile work environment" for purposes of Title VII of the Civil Rights Act of 1964 and the Virgin Islands Discrimination in Employment Act, codified at Chapter 17 of Title 24 of the Virgin Islands Code. *See supra* p. 26-27. Now, the Court scrutinizes the claims in view of the Virgin Islands Civil Rights Act.

The Virgin Islands Supreme Court in *Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529 (2015), cautions that simply "grafting on" a federal Title VII analysis to the Virgin Islands Civil Rights Act is not the preferred approach. *Id*. at 551-52. The Court is unable to locate any Virgin Islands Supreme Court or Superior Court opinion that identifies the allegations necessary to maintain a sex discrimination and/or sexual harassment claim under the Virgin Islands Civil Rights Act in the face of a motion to dismiss. In the absence of such guidance, the Court is reluctant to articulate its own standards. However, based upon the Court's reading of the statutes at issue and the allegations in the complaint, the Court finds that Plaintiff has failed to state a plausible claim of employment discrimination based upon sex under 10 V.I.C. § 64(1)(a)[23] because she fails to relate any facts regarding her termination or any discrimination regarding the terms, conditions, or privileges of her employment to her sex.

On the other hand, based upon the Court's findings regarding sexual harassment, and the fact that the threshold to state a claim under 10 V.I.C. § 64a[24] arguably may be lower than for Title VII, the Court will allow Plaintiff to pursue her claim for Section 64a(a) sexual harassment, but not her claim under 64a(c) for failure to adopt a workplace harassment

---

[22] Defendants do not specifically direct address Count V of the Complaint.  *See* ECF No. 35 at 14.
[23] The statute provides:

> **(1)** It shall be an unlawful discriminatory practice:
> **(a)** For an employer, because of age, race, creed, color, national origin, place of birth, sex, disability and/or political affiliation of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

10 V.I.C. § 64(1)(a).
[24] Section 64a broadly prohibits sexual harassment in employment. 10 V.I.C. § 64a(a). Subparagraph c of Section 64a, among other things, requires employers to adopt a written policy against sexual harassment and provide sexual harassment education and training for employees. 10 V.I.C. § 64a(c).

policy.[25] Compl. at ¶¶ 121-23. Consequently, the Court will grant Defendants' motion with regard to Count IV and deny Defendants' motion as to Count V of the Complaint.

### 5.        Count VI -- Retaliation in Violation of 24 V.I.C. § 451a

Plaintiff alleges not only that her termination was discriminatory, but also that it was in retaliation for her complaints about the alleged sexual harassment and discrimination she experienced and about alleged pay discrepancies. Compl. at ¶ 89. Plaintiff specifies that she brings her retaliation claim under Section 451a of Title 24 of the Virgin Islands Code, which provides, in relevant part:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee . . . reports or is about to report, verbally or in writing, a violation or a suspected violation of this chapter, regulation or rule promulgated pursuant to law of this territory or the United States to a public body, . . . .

24 V.I.C. § 451a(a). Subparagraph (b) of the statute further provides that "a person who alleges a violation of this section may bring a civil action for appropriate injunctive relief, or actual damages, or both, within ninety days after the occurrence of the alleged violation of the provisions of this section." 24 V.I.C. § 451a(b).

Defendants assert that they are entitled to dismissal of this count because 1.) Plaintiff formed her intention to "report" Defendants only after her employment had ended, 2.) Plaintiff never informed Defendants that she intended to file a claim with the Virgin Islands Department of Labor or any other "public body," and 3.) the claim is time-barred. ECF No. 35 at 15-16. The Court need not consider the first two grounds posited by Defendants because the Court finds in favor of the argument that Plaintiff's claim is time-barred.

The Superior Court of the Virgin Islands recently considered this statute in *Schrader-Cooke v. Government of the Virgin Islands*, 72 V.I. 218 (Super. Ct. 2019). Therein the court held that the "statutory limitation period is . . . jurisdictional . . . ." *Id.* at 249. Thus, in order to maintain her claim, Plaintiff must have initiated this action "within 90 days of the alleged retaliation." *Id.* Plaintiff filed the complaint herein more than 90 days after the date she

---

[25] For further discussion regarding 10 V.I.C. § 64a *see infra* p. 35.

alleges she was terminated.[26] Consequently, her claim for retaliatory discharge under 24 V.I.C. § 451a is time-barred, and the Court will grant Defendants' motion as to Count VI of the Complaint.

### 6.      Count X -- Promissory Estoppel

In support of her claim for promissory estoppel, Plaintiff alleges that Defendant Michael Barry promised her a managerial position with $50,000 annual salary, if she "would not report her complaints about him to the authorities." Compl. at ¶ 147. Plaintiff alleges that she relied upon this promise to her detriment. *Id.* at ¶¶ 149, 152-53. As Defendants recite:

> To establish a claim for promissory estoppel, the following elements must be pled and proven: "(1) the promisor made a promise that he should have reasonably expected to induce forbearance; (2) the promisee refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise."

ECF No. 35 at 18 (quoting *Virgin Islands Port Authority v. Four Star Aviation*, ST-09-CV-272, 2010 WL 11718584, at *2 (V.I. Super. Ct. July 30, 2010) [2020 V.I. LEXIS 101, at *5] (citing *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 560, 45 V.I. 495 (D.V.I. 2004) (in turn, citing Restatement (Second) of Contracts § 90))).

Defendants dispute that Plaintiff has adequately alleged that she "refrained from taking action in reliance on the promise." ECF No. 35 at 18. The Court agrees. While Plaintiff alleges that she "informed Defendant Michael Barry that she would report Defendants' activities to the Department of Labor," Compl. at ¶ 65, nowhere in the Complaint does she allege that she did not make such a report as a direct result of or in reliance upon Defendant Michael Barry's "promise" to re-hire her. Indeed, she "did in fact file a complaint with the Department of Labor against Defendant Michael Barry and Sun Dog Café" and "[s]oon thereafter" negotiations ceased. *Id.* at ¶ 129. Further, Plaintiff alleges that she timely filed a claim with the EEOC. *Id.* at ¶ 15. Plaintiff also alleges that she sought other employment. *Id.* at ¶ 78. Thus, the Court agrees with Defendants that it is not clear from the complaint what

---

[26] Plaintiff alleges that she was terminated on January 7, 2019. She filed her Complaint in the Superior Court of the Virgin Islands on October 15, 2020. *See supra* p. 28 n.20. Even if the Court were to consider Plaintiff's suggestion that the retaliatory conduct occurred after her termination during negotiations for her "possible re-hiring," ECF No. 36 at 6-7, the Court agrees with Defendants that, in that instance, Plaintiff was not an "employee" for purposes of the statute. ECF No. 38 at 6-7.

action Plaintiff refrained from taking in reliance upon Defendant Michael Barry's purported promise to re-hire her to a managerial position, as she alleges. Consequently, the Court finds that Plaintiff has failed to state a plausible claim for promissory estoppel and will grant Defendant's motion as to Count X.

### 7.    Count XI -- Negligent Retention

Plaintiff's claim for negligent retention centers on her view that Kimberly Templeton, whom, according to Plaintiff, "Defendants hired and retained . . . to do the bookkeeping, payroll, and tax preparation for" Sun Dog, Compl. at ¶ 157, was "an incompetent bookkeeper and accountant." *Id.* at ¶ 161.

In the Virgin Islands,

> to state a claim for negligent hiring, Plaintiff must plausibly plead: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing plaintiffs injuries; and (5) the employer's negligence in hiring or retaining the employee was the proximate cause of the plaintiff's injuries.

*Canton v. Government of the Virgin Islands.*, Civil No. SX-13-CV-42, 2016 V.I. LEXIS 31, at *14-15 (Super. Ct. Apr. 4, 2016) (quoting *Bell v. Radcliffe*, Case No. ST-CV-392, 2014 V.I. LEXIS 119, at *31-33 (Super. Ct. Apr. 30, 2014) (internal citations omitted)); *see also Miga v. Jamis*, Civil No. 2019-85, 2020 U.S. Dist. LEXIS 213133, at *4-6 (D.V.I. Nov. 16, 2020) (citing *Bell* and noting the *Banks* analysis therein).

Defendants declare that Plaintiff's claim fails because of insufficient facts regarding Templeton's incompetence and Defendants' knowledge of same. ECF No. 35 at 19. However, Plaintiff alleges that she "had regular discussions" with Defendant Michael Barry about discrepancies in her pay. Compl. at ¶ 46. She also lists specific items regarding her pay that support her allegations of Templeton's incompetence. *Id.* at ¶¶ 47-48. Accepting the non-conclusory allegations as true and drawing all inferences in favor of Plaintiff, the Court finds that Plaintiff adequately alleges a plausible claim for negligent retention.

To summarize, the Court finds that Plaintiff has stated plausible claims in Count II, Count III (insofar as she claims sexual harassment under 24 V.I.C. § 451(a)(2)), Count V (to the extent she claims sexual harassment under 10 V.I.C. § 64a(a)), and Count XI of her

Complaint. Consequently, the Court will deny Defendants' 12(c) motion (ECF No. 34) as to those counts. The Court will grant the said motion as to Count I, Count III (to the extent it makes claims for wrongful termination and discrimination under 24 V.I.C. §§ 451(a)(1) and 453), Count IV, Count V (insofar as any claim made under 10 V.I.C. § 64a(c)), Count VI, and Count X.

### D. Defendants' Motion to Dismiss Individual Defendants

In this motion, Defendants move to dismiss all counts of the Complaint as to the individual defendants, Defendants Michael Barry and Barbara Barry. (ECF Nos. 39-40.) The Court has found herein that Plaintiff has failed to allege a plausible Title VII claim in Count I and will dismiss that count in its entirety. *See supra* pp. 24-25. Plaintiff agrees that the individual defendants are not liable under Plaintiff's remaining Title VII claim. ECF No. 44 at 2. Therefore, the Court will dismiss Count II of the Complaint as to Defendants Michael and Barabara Barry. Also, the Court has found herein that Plaintiff has failed to allege a plausible claim for wrongful termination and discrimination under 10 V.I.C. § 64(1)(a) in Count IV and for promissory estoppel in Count X. *See supra* pp. 28-32. In addition, the Court has found that Plaintiff's claim for retaliation under 24 V.I.C. § 451a as alleged in Count VI is time-barred. *See supra* pp. 30-31. Thus, the Court makes the following determinations regarding Defendants' motion to dismiss as to the remaining counts of the Complaint, namely, Counts III, V, VII-IX, and XI as against Michael Barry and Barbara Barry.

### 1. Count III -- Wrongful Termination, Sexual Harassment and Discrimination under 24 V.I.C. §§ 451(a) and 453[27]

As noted herein, these statutes are part of the Virgin Islands Discrimination in Employment Act (VIDEA). *See supra* p. 27 n.18. Defendants move to dismiss this count as to the Barry Defendants on the theory that, because courts have applied Title VII analysis to discrimination and harassment claims brought under the VIDEA, the Court, in the absence of local law to the contrary, also should extend to the VIDEA the rule that natural persons

---

[27] The Court has found herein that Plaintiff's claim pursuant to 24 V.I.C. § 451(a)(1) for wrongful termination in Count III should be dismissed for the same reason as Count I and that Plaintiff's claims under 24 V.I.C. § 453 in Count III is improperly before the Court and untimely. *See supra* pp. 27-28. Thus, the Court analyzes the motion as it relates to a 24 V.I.C. § 451(a)(2) sexual harassment claim only.

cannot be held liable for Title VII violations.  ECF No. 40 at 6-7; ECF No. 45 at 2-3. The Court declines this invitation.

The definition of *employer* given by the Virgin Islands Legislature for the VIDEA is found in 24 V.I.C. § 462, which provides: "For the purposes of this chapter, the term 'employer' includes individuals, corporations, other legal entities, and all departments, offices, boards, institutions, branches, independent instrumentalities, and other agencies of the Government of the Virgin Islands." *Id*. This definition specifically includes "individuals." Thus, the definition of *employer* provided for purposes of the VIDEA is fundamentally different from the definition of employer in Title VII of the United States Civil Right Act, found in 42 U.S.C. § 2000e(b), where the statute defines an employer as a "person," and *person* is given its own definition in the preceding provision. The Court acknowledges that the Title VII definition for *person* also includes "one or more individuals." 42 U.S.C. § 2000e(a). However, given the language and structure of the definition of *employer* authored by the Virgin Islands Legislature in 24 V.I.C. § 462 and given that the Court is unable to find any ruling by the courts of the Virgin Islands regarding whether individual defendants may be held liable for violations of the VIDEA, the Court gives effect to the plain meaning of the statute. 1 V.I.C. § 42 ("Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language."); *see also, e.g., Smith v. Henley*, 65 V.I. 179, 194 (Super. Ct. 2016) ("[U]nder the canons of statutory construction, the plain meaning of a statute is controlling, absent any ambiguity." (citations omitted)); *Crawford v. Daly*, 55 V.I. 66, 80 (Super. Ct. 2010) ("Given the surfeit of cases by the United States Supreme Court on the issue of statutory construction, the plain meaning of a statute is controlling, absent ambiguity."). Consequently, the Court finds that Defendants Michael Barry and Barbara Barry may be liable as individuals to Plaintiff for any violation of 24 V.I.C. § 451(a)(2) as alleged in Count III of Plaintiff's Complaint and will deny Defendants' 12(c) motion as to this part of Count III.

### 2. Count V -- Sexual Harassment in Violation of 10 V.I.C. § 64a

Defendants do not specifically address any sexual harassment claim that Plaintiff may have pursuant to 10 V.I.C. § 64a(a). As the Court has found herein, Plaintiff may bring a claim

pursuant to Section 64a(a) for sexual harassment. *See supra* p. 30. Regarding whether the individual defendants may be sued, the Court again employs the plain meaning method of statutory construction. As with the definition of *employer* as used in the VIDEA, the Virgin Islands Legislature provides a definition of *employer* for purposes of section 64a of Title 10; that definition includes "[a]ny natural or juridical person of any kind . . . that employ persons for any kind of compensation . . . ." 10 V.I.C. § 64a(b)(2). Consequently, the Court finds that Defendants Michael Barry and Barbara Barry may be sued individually on this count of the Complaint.

Defendants also argue that Plaintiff has no claim for a violation of Section 64a(c) regarding the adoption of a policy against sexual harassment. ECF No. 40 at 8. Defendants argue that this statute "does not create a private cause of action" because enforcement authority for violations of that subsection of the statute is given only to the "commission." *Id*. The relevant language is found in 10 V.I.C. § 64a(c)(2)(B), which states: "If an employer violates the requirements of this subparagraph and subparagraph (B), the commission shall issue an order requiring the employer to comply with these requirements." The Court interprets "this subparagraph" to mean subsection c. Consequently, the Court agrees with Defendants that Plaintiff cannot bring a claim under Section 64a(c) for a failure to adopt a policy against sexual harassment.

### 3. Count VII -- Violation of the Equal Pay Act: Pay Discrimination on the Basis of Sex is a violation of the Equal Pay Act of 1963, as amended, as it appears in volume 29 of the United States Code Section 206(d) and Count VIII -- Violation of the Fair Labor Standards Act (FLSA) under 29 U.S. Code § 216(b) (Illegal Employer Retention of Tips)

Defendants urge the Court to dismiss these counts of the Complaint as to Michael and Barbara Barry on the ground that the "'economic realities' alleged by Plaintiff are insufficient to find that an employer-employee relationship existed between the Barrys and Plaintiff for the purposes of assessing individual liability of Mr. and Mrs. Barry for FLSA and EPA violations." ECF No. 40 at 10. Defendants then point to other employees as having more control over Plaintiff, such as Kim Templeton, the bookkeeper, and Elizabeth Brunelli, the scheduling manager. *Id*. They also assert that "Plaintiff's complaint never alleges that Mrs. Barry was responsible for any of the day-to-day operations at Sun Dog Café or had any

responsibility for direct supervision of Plaintiff." *Id*. Defendants conclude that "Plaintiff's complaint does not establish that either Mr. or Mrs. Barry were directly responsible for the daily supervision of Plaintiff and as such, Counts VII and VIII must be dismissed." *Id*.[28]

Plaintiff opposes by stating that, in fact, she "alleged that the Barrys deliberately intervened in management of employees, and involved themselves in daily shift operations, including dictating scheduling requirements and enforcing rules about employee absences." ECF No. 44 at 5-6. Plaintiff also argues that she "alleged conversations regarding the terms of her employment in which both Michael Barry and Barbara Barry participated. Defendants raise a fact-specific inquiry that is not suitable for resolution by the Court prior to full discovery. This should be considered by the finder of fact after discovery." *Id*.

It is beyond dispute that the FLSA:

imposes individual liability on 'any person acting directly or indirectly in the interest of an employer in relation to an employee. . . . ' 29 U.S.C. § 203(d). Aside from the corporate entity itself, a company's owners, officers, or supervisory personnel may also constitute 'joint employers' for purposes of liability under the FLSA.

*Acosta v. Osaka Japan Rest., Inc*., Civil Action No. 17-1018, 2018 U.S. Dist. LEXIS 115960, at *39-40 (E.D. Pa. July 12, 2018) (quoting *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014)). The Third Circuit has articulated the following test for determining "joint employer" status under the FLSA:

does the alleged employer have: (1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like.

*In re Enterprise Rent-A-Car Wage & Hour Emp. Prac. Litig*., 683 F.3d 462, 469 (3d Cir. 2012). As the *Enterprise* court notes, under the "economic realities" theory, as advocated by Defendants, "the FLSA defines employer 'expansively,' . . . and with 'striking breadth.' . . . The

---

[28] In their reply in support of this motion, Defendants declare that "Plaintiff has failed to allege sufficient facts which, if taken as true, could justify piercing the corporate veil, or demonstrate Mr. and Mrs. Barry's control over working conditions." ECF No. 45 at 7. However, given the definition of *employer* for purposes of the FLSA and the Equal Pay Act, it is not necessary for the Court to engage in a "piercing the corporate veil" analysis to determine whether Defendants Michael and Barbara Barry can be held individually liable under these statutes.

Supreme Court has even gone so far as to acknowledge that the FLSA's definition of an employer is 'the broadest definition that has ever been included in any one act.'" *Id.* at 467-68 (citation and internal citations omitted). Thus, the court cautions that its four-part inquiry

> is not exhaustive, and cannot be "blindly applied" as the sole considerations necessary to determine joint employment. . . . If a court concludes that other indicia of "significant control" are present to suggest that a given employer was a joint employer of an employee, that determination may be persuasive, when incorporated with the individual factors we have set forth.

*Id.* at 469-70 (internal citation omitted). The *Enterprise* court arrived at its "test" by modifying one outlined by the Western District Court of Pennsylvania in *Lewis v. Vollmer of America*, Civil Action No. 05-1632, 2008 U.S. Dist. LEXIS 9039 (W.D. Pa. Feb. 7, 2008), because it felt the approach by the *Lewis* court, although instructive, needed amplification: "A simple application of the Lewis test would only find joint employment where an employer had direct control over the employee, but the FLSA designates those entities with sufficient *indirect* control as well." *In re Enterprise*, 683 F.3d at 469 (emphasis in original).

Because, for the purposes of this motion, the Court must accept Plaintiff's allegations as true and draw all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has alleged enough facts to support a claim that Defendants Michael and Barbara Barry were her employers for purposes of the FLSA and Equal Pay Act.[29] She alleges that they are the owners, managers, and policymakers of Sun Dog, as well as other allegations that could be construed as their exercise of control over scheduling, hiring, and firing. *See* Complaint at ¶¶ 8, 9, 30, 31, 43, 50 51, 57, 67-69. *Shroyer-King v. Mom-N-Pops, LLC*, Civil Action No. 20-2058, 2021 U.S. Dist. LEXIS 210101, *8-9 (W.D. Pa. Nov. 1, 2021) ("Here, plaintiff has sufficiently alleged enough facts in support of her claim that the Individual Defendants are her employers. She alleges that all defendants jointly own, operate and/or manage the business known as Mom N Pop's Café, and that Individual Defendants exercised control over significant aspects of the company's day-to-day functions, including compensation of employees. Am. Comp. ¶¶ 7, 13, 33, and 67. At this stage of the litigation, the claims may

---

[29] The definition of *employer* in the FLSA applies to the Equal Pay Act. 29 U.S.C. § 203(d). *See, e.g., Burroughs v. MGC Servs.*, Civil Action No. 08-1671, 2009 U.S. Dist. LEXIS 29700, at *11 (W.D. Pa. Apr. 7, 2009).

proceed to discovery."). Therefore, the Court will deny Defendants' motion as to this count of the Complaint.

### 4. Count IX – Violation of Age Discrimination in Employment Act & Older Workers Benefit Protection Act of 1990

The Court agrees with Defendants that Plaintiff's claim of age discrimination under the ADEA, like Plaintiff's Title VII claims, cannot be maintained against the individual defendants. Plaintiff does not address this count in her opposition. *See* ECF No. 44 and ECF No. 45 at 1. It has been widely held, including in this circuit, that "the ADEA does not provide for individual liability." *Hill v. Borough of Kutztown*, 455 F.3d 225, 246 (3d Cir. 2006). Consequently, the Court will grant Defendants' motion as to Count IX.

### 5. Count XI -- Negligent Retention

Defendants move to dismiss this count of the complaint against Defendants Michael and Barbara Barry on the grounds that the only way said Defendants can be sued individually for negligent retention is by "piercing the corporate veil." ECF No. 40 at 13. Defendants claim that Plaintiff has not alleged nor has shown any circumstances warranting such a piercing of the corporate veil. *Id.* at 14-16. Therefore, they conclude, "Without any justification for piercing the corporate veil, the individual Defendants in this case cannot be held liable for any alleged wrong-doing of Sun Dog Café." *Id.* at 16.

While Defendants cite numerous cases in support of the "corporate shield doctrine," the Court finds them inapposite. The doctrine itself is well established. However, none of the cases cited present fact situations or causes of action similar to the ones presented in the matter at bar. For example, *Cesar Castillo, Inc. v. Healthcare Enterprises, L.L.C.*, Civil No. 2021-108, 2016 U.S. Dist. LEXIS 132281 (D.V.I. Sept. 27, 2016), involved a creditor seeking to recover a debt against the corporate defendants, where only the corporate defendants entered into the payment agreements at issue and the individual defendant never personally guaranteed the debt. Applying the corporate shield doctrine in the area of contracts law is different from applying the doctrine in the context of tort law. And, although the claims in *Donastorg v. Daily News Publ'g Co., Inc.*, 63 V.I. 196 (Super Ct. 2015), involved tort claims, the civil conspiracy claim under which the court undertakes its review of the state of Virgin Islands law regarding "piercing the corporate veil" presented a much different fact scenario

and legal claim than the one alleged here by Plaintiff. *Wedner Unemployment Comp. Case*, 449
Pa. 460 (1972), also is unhelpful to Defendants' argument, where the court was considering
the application of a specific state statute by the Pennsylvania Unemployment Compensation
Board of Review.

Despite the corporate shield and *respondeat superior* doctrines, numerous courts
have recognized that the:

> doctrine of *respondeat superior* does not bar individual liability for *individual*
> torts, even when the individual is acting in a representative capacity. *Holman*
> *v. State*, 53 Cal. App. 3d 317, 124 Cal Rptr. 773, 785 (1975); *Sanford v. Kobey*
> *Bros. Const. Corp.*, 689 P.2d 724, 725 (Colo. App. 1984). *Sanford* specifically
> held that a servant may be held personally liable for his individual acts of
> negligence, as also may an officer, director, or agent of a corporation for his or
> her tortious acts, regardless of fact that the master or corporation also may be
> vicariously liable. Neither doctrine of *respondeat superior* nor fiction of
> corporate existence bars imposition of individual liability for individual acts of
> negligence, even when the individual is acting in a representative
> capacity. *Id.* at 725. *Holman* specifically states that an agent or employee is
> always liable for his own tort irrespective of whether the principal is liable and
> regardless of whether agent acts according to his principal's
> directions. *Holman* at 785.

*Kalawe v. KFC Nat'l Mgmt. Co.*, Civ. No. 90-00779 ACK, 1991 U.S. Dist. LEXIS 20073, at *10 (D.
Haw. July 16, 1991). Based upon this line of cases and in the absence of Virgin Islands law to
the contrary, the Court finds that, where the Court has found that, for purposes of
Defendants' motion to dismiss for failure to state a claim, Plaintiff has adequately alleged
facts to support a conclusion that, as owners of Sun Dog, Michael Barry and Barbara Barry
exercised the authority to hire, supervise, and fire employees, *see supra* p. 37, Plaintiff's claim
for negligent retention can be asserted against Defendants Michael Barry and Barbara Barry,
individually, *See, e.g., Doe v. Grand Villa of New Port Richey*, 540 F. Supp. 3d 1168, 1173-174
(M. D. Fla. May 19, 2021) (where the court imposes liability upon the managers of an LLC for
claims of negligence, negligent retention, and negligent misrepresentation); *McElveen v.*
*Peeler*, 544 So. 2d 270, 271 (Fl. Dist. Ct. App. 1989) ("'Individual officers and agents of a
corporation are personally liable *where they have committed a tort* even if such acts are
performed within the scope of their employment or as corporate officers or agents.'"

(citations omitted) (emphasis in original)). Consequently, the Court will deny Defendants'
motion as to Count XI of the Complaint.

## IV. CONCLUSION

Because the Court finds that the Court has subject matter jurisdiction over
Defendants' claim for declaratory relief and may exercise supplemental jurisdiction over the
defamation claim as alleged in Defendants' Counterclaim, the Court will deny Plaintiff's
12(b)(1) Motion to Dismiss Counterclaims (ECF No. 7).

Further, the Court finds that Defendants have failed to allege a plausible claim for
declaratory relief against Plaintiff as a "vexatious litigant," but they have alleged a plausible
claim for defamation for Plaintiff's alleged statement that Defendants were "stealing from
their employees." Consequently, the Court will grant in part and deny in part Plaintiff's
12(b)(6) Motion to Dismiss Counterclaims (ECF No. 6).

Based upon the reasons stated herein, the Court finds that Plaintiff has stated
plausible claims in Count II, Count III (insofar as she claims sexual harassment under 24 V.I.C.
§ 451(a)(2)), Count V, and Count XI of her Complaint. Consequently, the Court will deny
Defendants' Motion to Dismiss (ECF No. 34) as to those counts. The Court will grant
Defendants' Rule 12(c) motion, (ECF No. 34), as to Count I, Count III (to the extent it makes
claims for wrongful termination and discrimination under 24 V.I.C. §§ 451(a)(1) and 453),
Count IV, Count VI, and Count X.

Regarding Defendants Motion to Dismiss Individual Defendants (ECF No. 39), the
Court finds that Plaintiff may maintain Count III for any violation of 24 V.I.C. § 451(a)(2) for
sexual harassment only, Count V for any violation of 10 V.I.C. § 64a(a) for sexual harassment
only, Count VII, Count VIII, and Count XI against Defendants Michael and Barbara Barry,
individually. Thus, the Court will grant, in part, and deny, in part, the said motion.

In addition, the Court will order Plaintiff to file an amended complaint that comports
with the findings herein and incorporates the Court's dismissal of Count I, parts of Count III,
Count IV, parts of Count V, Count VI, and Count X; Counts II and IX as to the individual
defendants; and, to cure the deficiencies, if possible, of Count X. *See, e.g., Alston v. Parker*, 363
F.3d 229, 235 (3d Cir. 2004) (stating that "even when a plaintiff does not seek leave to

amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile").

     An appropriate Order follows.


**Dated:** December 16, 2022             */s/ Robert A. Molloy*
                                        **ROBERT A. MOLLOY**
                                        **Chief Judge**